# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 15, 2011

No. 09-20868

Lyle W. Cayce
Clerk

REAL ESTATE INNOVATIONS, INC.,

Plaintiff - Appellant

v.

HOUSTON ASSOCIATION OF REALTORS, INC; E-HAR INC.; NATIONAL ASSOCIATION OF REALTORS INC; REAL DATA INC.; HOUSTON REALTORS INFORMATION SERVICE INC., also known as e-Har Inc; SUSIE G. HALE, doing business as eFrog Pond Inc; MARKETLINX INC., doing business as Interactive Data Development; LANDSTAR INC.; STEVEN D. SMITH, doing business as Applied Office Technology Inc.; RICHARD A SMITH, doing business as Coldwell Banker United Realtors; JOHN DAUGHERTY REALTORS INC.; ROBERT F. KORY, doing business as RK Western Realty, also known as Century 21-Western Realty, Inc.; JAMES H. KEENAN, doing business as Kidwell-Keenam, Realtors, also known as RE/MAX Elite; PEGGY TUTHILL REALTORS, INC., formerly known as Keller Williams Memorial; PETER B. MERRITT, doing business as Peter B. Merritt, L.L.C., formerly known as Realty Associates; FIRST AMERICAN REAL ESTATE SOLUTIONS, L.L.C.; ET AL,

Defendants - Appellees

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:07-CV-3563

Before GARWOOD, ELROD, and SOUTHWICK, Circuit Judges.

No. 09-20868

PER CURIAM:[*]

This suit arises from a failed business relationship between Real Estate Innovations and Johnnie Norsworthy. Real Estate Innovations filed a barrage of claims against the defendants, ranging from claims of copyright infringement to RICO Act violations. Through a series of motions to dismiss, the district court dismissed all claims against the defendants. Real Estate Innovations appealed. We AFFIRM.

## STATEMENT OF FACTS

Real Estate Innovations (REI) is a software marketing corporation in Houston, Texas, owned by Pamela Connery-Hazelwood. Johnnie Norsworthy is a software engineer who created software for a Disk Operating System copyrighted as "RE/minder loader v1.01." The program provides real estate brokers and agents listings-management software that organizes data delivered from the Multiple Listing Service into a computerized property book. It contains an inventory of real estate properties listed for sale and provides a platform for agents to search, view, and track showings of listed properties.

In October 1992, Norsworthy executed an agreement that gave REI exclusive marketing and sales rights to the "VS/REMS-Re/Minder" software. We mention now, and will discuss the relevance of the point later, that the software identified in the agreement is not the same one named in the copyright registration. Over the next 13 years, REI continued marketing the software, and Norsworthy provided support to REI by maintaining the software's compatibility with the frequent changes in the Multiple Listing Service system. Norsworthy released to REI for distribution the new VS/REMS-Re/Minder for Windows in

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 09-20868

April 2003. REI marketed and sold VS/REMS-Re/Minder for Windows until Norsworthy terminated their contract in October 2005.

REI alleges that in 2002, Defendants Norsworthy, First American MLS Solutions, National Association of Realtors, Houston Association of Realtors, Houston Realtors Information Service, Inc., Steve Smith, and Real Data, Inc. released REI's licensed VS/REMS-Re/Minder software over the internet without REI's knowledge or permission. These defendants allegedly released various web-based software products, called "copy products" by REI, that performed the same functions as REI's software. They were either free to Houston Association of Realtors' members or cost significantly less than REI's product.

In 2003, REI's clients began cancelling their subscriptions to REI's software in favor of competing products. REI contends that the defendants launched a web-based version of listing-management software that infringed REI's software. This allegedly infringing web-based version eliminated the need for the software governed by the agreement between REI and Norsworthy. REI asserts that Norsworthy acted in violation of REI's exclusive marketing and sales rights by secretly developing and selling similar, but directly-competing software. Many of the defendants are former clients of REI that terminated their subscriptions to use the competing online software. REI also alleges numerous defendants created partially or wholly owned entities to be resellers of VS/REMS-Re/Minder software without REI's permission.

Pamela Connery-Hazelwood, as owner of REI, filed a *pro se* complaint against four defendants alleging 11 claims for relief, including breach of contract, copyright infringement, tortious interference with a contract and a prospective business, fraudulent conversion and concealment, civil conspiracy, and violations of the Sherman Antitrust Act. Connery-Hazelwood, *pro se*, filed three amended complaints on behalf of REI. The result of the amendments was to add 34 defendants and 21 claims for relief. Counsel was retained by REI at

3

No. 09-20868

some point after the third amended complaint was filed. The defendants moved to dismiss. The district court partially granted these motions, holding that REI did not have standing to bring a copyright infringement claim. The court permitted REI to re-plead its fraud and RICO claims.

REI then filed its fourth amended complaint. Twenty-four defendants moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The defendants argued that at least seven of the claims were preempted by the Copyright Act, that REI's fraud allegations failed the particularity requirements of Rule 9(b), and that the remaining claims were insufficient to state a claim for relief. The district court agreed and granted the motion of 24 defendants. Then *sua sponte*, the district court dismissed those same claims against the remaining defendants.

A final judgment was entered on November 16, 2009, dismissing all claims against every defendant except Norsworthy.[1] This appeal followed.

## DISCUSSION

As an initial matter, there were seven claims raised in the district court but not discussed by REI on appeal. The defendants noted in their response brief the absence of these claims, yet REI did not file a reply to explain the omission. We consider the claims waived for failure to brief. *See Brinkmann v. Dallas Cnty. Deputy Sheriff Abner*, 813 F.2d 744, 748 (5th Cir. 1987). There also are a number of issues mentioned in REI's brief in too cursory a fashion for us to consider. Federal Rule of Appellate Procedure 28 requires that an appellant's brief "contain . . . [the] appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(9)(A). Because issues inadequately briefed on appeal are considered waived, we do not address REI's claims related to the Sherman

---

[1] Norsworthy filed for bankruptcy on or about April 17, 2008, and the district court signed an order administratively closing the case against him on June 6, 2008.

4

No. 09-20868

Antitrust Act or the Texas Uniform Fraudulent Transfer Act, nor do we discuss claims for circumvention of copyright systems, fraudulent concealment, fraudulent misrepresentation, and unfair competition.[2] *See id.* What remains for our consideration are the core issues of the controversy.

## I.    *Copyright Infringement*[3]

REI brought a copyright infringement claim, alleging that certain defendants infringed REI's copyright when they permitted the VS/REMS-Re/Minder software to be accessed, downloaded, and updated by other entities for commercial advantage or private financial gain.  The district court dismissed REI's copyright infringement claim for lack of standing with no further explanation.  REI then filed a motion seeking clarification of the court's ruling. The court reasoned that REI lacked standing to bring a claim for copyright infringement because the evidence demonstrated that Norsworthy had owned the copyright to the software since 1992, not REI.  Further, the court explained that although Norsworthy granted REI exclusive sales and marketing rights to the software in 1992, that agreement did not establish REI owned the copyright at issue.

We review questions of jurisdiction, and specifically standing, *de novo. Arguello v. Conoco, Inc.*, 330 F.3d 355, 361 (5th Cir. 2003).

"The ownership of a copyright may be transferred in whole or in part by any means of conveyance or by operation of law . . . ."  17 U.S.C. § 201(d)(1). "The owner of any particular exclusive right is entitled . . . to all of the protection and remedies accorded to the copyright owner by this title."  *Id*. § 201(d)(2). Section 106 of the Copyright Act provides a list of exclusive rights accorded to

---

[2] The claims we are not discussing because of inadequate briefing are identified in REI's brief as Issues 5, 6, 8, 9, and 10.

[3] We discuss Issue 1 from REI's brief in this section.  Because we determine REI has standing, we need not address Issue 13, REI's doctrine of accrued claim argument.

5

No. 09-20868

a copyright owner, including the exclusive right "to distribute copies . . . of the copyrighted work to the public by sale . . . ."  17 U.S.C. § 106(3).  Attached to REI's fourth amended complaint was a contract by which Norsworthy granted REI "exclusive Marketing and Sales Rights" to VS/REMS-Re/Minder software. The district court's holding that REI lacked standing was incorrect.  Because REI received the exclusive right to marketing and sales of the VS/REMS-Re/Minder software, REI has standing as the owner of that right and is entitled to the protections of the Copyright Act as to that particular software.

This court, however, may affirm the dismissal of REI's copyright infringement claim for any reason supported by the record regardless of whether the district court relied upon it.  *See Forsyth v. Barr*, 19 F.3d 1527, 1534 n.12 (5th Cir. 1994).  The defendants argued below and here that REI failed to state a claim because it did not meet this statutory registration requirement: "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  17 U.S.C. § 411(a).

The Supreme Court recently decided that lack of a copyright registration for the intellectual property that is the subject of a claim is not fatal to a court's jurisdiction but instead is a claims-processing requirement.  *Reed Elsevier, Inc. v. Muchnick*, __ U.S. __, 130 S. Ct. 1237, 1243-47 (2010).  If a plaintiff does not have a copyright registration, her claim may be dismissed for failure to state a claim but should not be dismissed for lack of subject matter jurisdiction.  2-7 Nimmer on Copyright, § 7.16[B][2][c].

The defendants assert that the proof of registration provided by REI dated April 20, 1993, is limited to a program called RE/minder loader v1.01.  REI's copyright infringement claims are based on VS/REMS-Re/Minder for Windows. REI has made no effort to explain the discrepancy in software names, nor has REI produced proof of registration for VS/REMS/RE/Minder for Windows.  It was

6

No. 09-20868

not until oral argument that REI's counsel first asserted that VS/REMS/RE/Minder for Windows is a derivative work of the underlying registered software. REI did not provide caselaw to the court on its derivative work argument until well over a month after oral argument in a Rule 28(j) letter. We do not address the merit of REI's derivative work argument because the argument was not presented to the district court for its consideration. *See Louque v. Allstate Ins. Co.*, 314 F.3d 776, 779 n.1 (5th Cir. 2002).

Because the registration requirements of 17 U.S.C. § 411(a) were not met as to the software at issue in this case, REI failed to state a claim for copyright infringement. Dismissal of REI's copyright infringement claims was proper.

## II.    *Copyright Act Preemption*[4]

REI contends that the district court erred in dismissing its state law claims for breach of contract and fraudulent conversion based on the preemption doctrine. "We review the district court's preemption analysis *de novo*." *Wright v. Allstate Ins. Co.*, 415 F.3d 384, 389 (5th Cir. 2005) (citation omitted).

Though perhaps counter-intuitive, it is settled that the absence of a copyright registration does not preclude the application of the doctrine of preemption that exists under the Copyright Act. The claim-processing requirements of Section 411(a) relate to the validity of the copyright infringement claim, but have "no bearing on the preemption of state law under [Section] 301." *Trandes Corp. v. Guy F. Atkinson Co.*, 996 F.2d 655, 658 (4th Cir. 1993). Quite simply, Section 301's broad preemptive scope is not affected by Section 411(a)'s registration requirements. *Id.*

State laws are subject to federal preemption under the Copyright Act if they create "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 . . . ." 17

---

[4] We have combined the discussion of Issues 2, 3, and 4 from REI's brief in this section.

U.S.C. § 301(a).  Application of this provision is by a two-part test. *Carson v. Dynegy, Inc.*, 344 F.3d 446, 456 (5th Cir. 2003).  Both parts must be satisfied for there to be a preempted claim.  *Id.*  The cause of action first "is examined to determine whether it falls within the subject matter of copyright as defined by 17 U.S.C. § 102."  *Id.* (quotation marks and citations omitted).  If it does, "the cause of action is examined to determine if it protects rights that are equivalent to any of the exclusive rights of a federal copyright, as provided in 17 U.S.C. § 106."  *Id.* (quotation marks and citation omitted).  Section 106 grants the holder of a copyright the exclusive right to reproduce, distribute, perform, and display the copyrighted work.  17 U.S.C. § 106.

We first address the issue of preemption as applied to REI's breach of contract claim.  REI's fourth amended complaint alleged that the defendants "breached Plaintiff[']s contract and caused economic injury to Plaintiff's business from the illegal distribution (file-sharing) of Plaintiff[']s licensed VS/REMS/RE/Minder software to non-licensed real estate offices, agents and entities, in breach of Plaintiff[']s contract and in violation of Plaintiff[']s exclusive distribution rights."

The parties do not dispute that REI's software is within the subject matter of copyright. We must then decide whether the cause of action protects rights equivalent to exclusive rights under the Act.  *Carson*, 344 F.3d at 456.  This court has held that breach of contract claims are not preempted by the Copyright Act. *Taquino v. Teledyne Monarch Rubber*, 893 F.2d 1488, 1501 (5th Cir. 1990). "[An] action for breach of contract involves an element in addition to mere reproduction, distribution or display: the contract promise made by [the parties], therefore, it is not preempted."  *Id.* (citations omitted).

Although the district court erred in holding that REI's breach of contract claim is preempted by the Copyright Act, we may affirm the dismissal of a claim

for any reason supported by the record. *See Forsyth*, 19 F.3d at 1534 n.12. REI's breach of contract claim should be dismissed for failure to state a claim.

The Federal Rules of Civil Procedure require "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2). While the complaint does not need detailed factual allegations to survive a motion to dismiss, factual allegations must support that a right to relief is neither speculative nor merely a legal conclusion. *Ashcroft v. Iqbal*,__ U.S. __, 129 S. Ct. 1937, 1949 (2009).

Under Texas law, a breach of contract action requires "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (quotation marks and citation omitted).

REI does not attach, identify, or describe the terms of any contract between REI and the defendants.  The only contract mentioned and attached to its complaint is the exclusive distribution right agreement between REI and Norsworthy.  No defendant other than Norsworthy was a party to that contract, and Norsworthy is not a party to this appeal.  REI does not contend that the defendants in some other way owed obligations under the contract to REI, perhaps as a third-party beneficiary or for some other reason.

REI's breach of contract claim fails to state a claim because REI has not pled the existence of a contract between it and the defendants or the factual basis for a breach of any such contract.

We now consider whether preemption applies to REI's fraudulent conversion claim. "The tort of conversion relates to interference with tangible rather than intangible property and, hence, should be held immune from pre-emption." 1-1 Nimmer on Copyright § 1.01[B][1][i]. In Texas, conversion claims are limited to the wrongful exercise of dominion and control over tangible,

No. 09-20868

physical objects. *See Carson*, 344 F.3d at 456 (citing *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971)). Allegations involving intellectual property rights are outside the scope of Texas conversion law. *Id.* A claim for conversion will be preempted when the theory of recovery merely asserts the wrongful copying, distribution, or performance of an interest under the Copyright Act. *Daboub*, 42 F.3d at 289.

REI represents in its brief that it "alleged Defendants committed the acts of fraudulent conversion by not returning the software after Defendants improperly copied and used REI's software." A review of the pleadings does not support this assertion. REI's complaint instead demonstrated that its theory of conversion is based on intangible property – the alleged infringing distribution of "an Internet hosted version of [REI]'s licensed VS/REMS/RE/Minder software."

Because the allegations underlying REI's fraudulent conversion claim involved the defendants' wrongful distribution of REI's software, the district court properly held it was preempted.

III.   *Racketeering Influenced and Corrupt Organizations Act (RICO)*[5]

REI's third amended complaint alleged that the defendants violated RICO under 18 U.S.C. §§ 1961-68 and described nine predicate offenses. The district court granted REI leave to amend its RICO claims, noting deficiencies in the pleadings. Despite a fourth amendment, the district court dismissed REI's RICO claims for failure to state a claim. REI contends its allegations sufficiently stated a claim and should not have been dismissed.

Regardless of subsection, RICO claims have three common elements: "1) a *person* who engages in 2) a *pattern of racketeering activity*, 3) connected to the acquisition, establishment, conduct, or control of an *enterprise*." *Crowe v. Henry*,

---

[5] We discuss Issue 7 from REI's brief in this section.

No. 09-20868

43 F.3d 198, 204 (5th Cir. 1995) (quotation marks and citation omitted). "A plaintiff asserting a RICO claim must allege the existence of an enterprise." *Id.* (citation omitted).

An enterprise under RICO can include legal entities such as partnerships and corporations, but it also can include "any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "If the enterprise alleged is an 'association in fact' enterprise, the plaintiff must show evidence of an ongoing organization, formal or informal, that functions as a continuing unit over time through a hierarchical or consensual decision-making structure." *Elliot v. Foufas*, 867 F.2d 877, 881 (5th Cir. 1989) (citation omitted).

The district court held that REI failed to plead specific facts to established the existence of an enterprise. We agree. REI's conclusory allegations did not provide sufficient facts to establish the existence of an enterprise. REI's fourth amended complaint provided a mere recitation of the elements necessary to demonstrate an enterprise without providing relevant facts. Accordingly, the district court properly dismissed REI's RICO claims for failure to state a claim.

IV.    *Denial of Leave to Amend*[6]

First American Real Estate Solutions filed a motion to dismiss REI's fourth amended complaint, arguing that REI had abandoned its claims against it. Although First American was a named defendant in REI's third amended complaint, it was omitted in the fourth amended complaint. REI claimed the omission was a typographical error and sought leave to amend its complaint a fifth time to include First American as a defendant. First American responded that despite being a named defendant in the third amended complaint, it was never served with process and had sought dismissal on that basis. In fact, the

---

[6] We discuss Issue 11 from REI's brief in this section.

district court previously had granted dismissal to First American on the third amended complaint without prejudice, allowing REI leave to perfect service.

The district court held that REI already had four opportunities to amend its complaint to cure any deficiencies. The district court denied REI's request for leave to amend its complaint for a fifth time and granted First American's motion to dismiss.

REI contends the district court erred by denying its request to amend. We review "a district court's denial of leave to amend a complaint for abuse of discretion." *Ashe v. Corley*, 992 F.2d 540, 542 (5th Cir. 1993) (citation omitted). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In deciding whether to allow an amendment, a district court "may consider such factors as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment." *Matter of Southmark Corp.*, 88 F.3d 311, 314-15 (5th Cir. 1996).

REI was afforded the opportunity to perfect service on First American after filing its third amended complaint, but did not. REI then filed a fourth amended complaint omitting First American and again failing to perfect service. The district court did not abuse its discretion in denying leave to amend.

V. *Sua Sponte Dismissal of Claims*[7]

REI challenges the *sua sponte* dismissal of its remaining claims. By ruling on a series of motions to dismiss, the district court dismissed claims against a number of defendants. The district court then *sua sponte* dismissed those same claims against other defendants. The court explained that REI had alleged the same 15 claims disposed of by its previous order against many of the remaining defendants, and that to the extent those same claims were alleged, the court

---

[7] We discuss Issue 12 from REI's brief in this section.

dismissed them with prejudice against the remaining defendants consistent with that order. Following that same approach, the district court dismissed all remaining claims *sua sponte* in a subsequent order.

A district court's *sua sponte* dismissal is reviewed *de novo*. *White v. Johnson*, 429 F.3d 572, 573 (5th Cir. 2005). A district court has authority to dismiss a complaint on its own motion for failure to state a claim. *Carroll v. Fort James Corp.*, 470 F.3d 1171, 1177 (5th Cir. 2006). The district court may dismiss *sua sponte* only "as long as the procedure employed is fair." *Id.* (quotation marks and citation omitted). This court has "suggested that fairness in this context requires both notice of the court's intention and an opportunity to respond." *Id.* Even if the district court failed to provide notice to the plaintiff prior to dismissal, this court still may affirm if the plaintiff has alleged its "best case" and the dismissal was otherwise proper. *Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 643 (5th Cir. 2007). "At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986).

REI contends that the district court erred by failing to give REI notice of the court's intention to dismiss the claims or an opportunity to amend its complaint. Despite several amendments, REI insists it only had one opportunity to amend once employing counsel. The defendants argue that despite the lack of notice, REI had the opportunity to allege its best case.

The district court permitted REI to amend its complaint four times to correct deficiencies noted by the court before its *sua sponte* dismissal. REI's explanation for wanting to amend again did not offer reasons that would change the outcome of the case. REI had the opportunity to allege its best case. We find no error in the dismissal of REI's remaining claims.

AFFIRMED.